RODNEY KENNETH TOWNSEND,

        Plaintiff,

                                      Case No. 3:14-cv-1436-J-34MCR

vs.

GENUINE PARTS COMPANY,
(NAPA AUTO PARTS STORES),

        Defendant.

_____/

# O R D E R

**THIS CAUSE** is before the Court on Defendant's Motion for Summary Judgment and Incorporated Memorandum of Law (Doc. 62; Motion), filed on September 13, 2016. In the Motion, Defendant Genuine Parts Company requests that the Court enter summary judgment in its favor pursuant to Rule 56, Federal Rules of Civil Procedure (Rule(s)). See Motion at 1. Townsend filed a response in opposition to this request on September 26, 2016. See Memorandum of Law Opposing Defendant's Motion for Summary Judgment/Reply & Responses (Doc. 64; Response). Accordingly, this matter is ripe for review.

## I.    Procedural History

Plaintiff Rodney Kenneth Townsend (Townsend) initiated this action, pro se, against Defendant Genuine Parts Company (NAPA) on November 25, 2014. See Complaint (Doc. 1). Because Townsend sought to proceed in forma pauperis, the Magistrate Judge reviewed his Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B). See Order (Doc. 4), entered December 11, 2014. Although the Magistrate Judge found that Townsend's initial

Complaint was insufficient to satisfy the requirements of § 1915(e)(2)(B), he provided Townsend with the opportunity to amend the Complaint. See Order (Doc. 4). Townsend's first attempt at amendment was still deficient, but after additional amendments, the Magistrate Judge determined that Townsend's Third Amended Complaint (Doc. 13; Amended Complaint), filed on May 28, 2015, adequately stated a claim to warrant granting him leave to proceed in forma pauperis. See Order (Docs. 6, 12, 15). In the Amended Complaint, Townsend alleges that NAPA discriminated against him on the basis of his age, in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623, and section 34-1-2 of the Georgia Code, as well as on the basis of his race, in violation of Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e et seq. and the Florida Civil Rights Act (FCRA), Fla. Stat. § 760.01 et seq. See Amended Complaint at 6.

In the instant Motion, NAPA seeks the entry of summary judgment in its favor pursuant to Rule 56. As required by the Rule, NAPA supports its Motion with evidence in the form of deposition testimony, sworn declarations, and business records. See Motion, Exs. 1-4; see also Rule 56(c)(1)(A). In his Response, Townsend argues that many of the factual assertions set forth in NAPA's Motion are "controverted," however, he presents no evidence to support his arguments. See generally Response. This is significant because neither the arguments in Townsend's unsworn Response, nor the allegations in the Amended Complaint, are evidence for purposes of summary judgment. See Rule 56(c)(1). Therefore, in determining whether there are genuine disputes of fact for trial, the Court does not consider Townsend's unsupported statements or allegations.[1] See Holloman v.

---

[1] Of course, the Court still reviews NAPA's assertions and evidentiary submissions to determine whether the facts set forth in the Motion are properly supported by the evidence.

<u>Jacksonville Housing Auth.</u>, No. 06-10108, 2007 WL 245555, at *2 (11th Cir. 2007) ("[U]nsworn statements, even from <u>pro se</u> parties, should not be 'consider[ed] in determining the propriety of summary judgment.'" (second alteration in original) (quoting <u>Gordon v. Watson</u>, 622 F.2d 120, 123 (5th Cir. 1980))).[2]

Notably, Townsend was aware of the evidentiary requirements for responding to a summary judgment motion prior to filing his Response. Indeed, when NAPA filed the Motion, the Court promptly entered a notice explaining to Townsend the import of a summary judgment motion and the proper procedures for responding to one. <u>See</u> Summary Judgment Notice (Doc. 63), filed September 14, 2016. Specifically, the Court advised Townsend, <u>inter alia</u>, that "all material facts asserted by the movant in the motion(s) will be considered to be admitted by you unless controverted by <u>proper evidentiary materials</u> (counter-affidavits, depositions, exhibits, etc.) filed by you," and "you may not rely solely on the allegations of the issue pleadings (e.g., complaint, answer, etc.) in opposing these motion(s)." <u>See id.</u> at 2 (emphasis added) (citing <u>Griffith v. Wainwright</u>, 772 F.2d 822, 825 (11th Cir. 1985)). The Court also cautioned Townsend that "if the Court grants the motion(s) for summary judgment, such would be a **final decision** of the Court . . . [and] [a]s a result of such final decision, there would be no trial or other proceedings in this case . . . ." <u>Id.</u> Despite these admonitions, rather than oppose the Motion with evidence, Townsend appears to contend that he is entitled to a trial in this case based on the Court's prior finding that the Amended Complaint was sufficient to permit Townsend to proceed <u>in forma pauperis</u>, the issuance of a summons, the designation of this case as a

---

[2] In <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

"Track Two" case under the Local Rules, and the entry of a Case Management Scheduling Order (Doc. 29). <u>See</u> Response at 1-3, 21-23. Townsend is mistaken. The Court's determination that Townsend had sufficiently <u>alleged</u> a cause of action such that he could proceed with this case and subsequent orders on case management procedures has no bearing on the question of whether there are genuine issues of material fact necessitating a trial. As Townsend received notice of the requirements of Rule 56, and has had the opportunity to present every factual and legal argument available to him, the Court finds it appropriate to take up the Motion at this time.

## II. Standard of Review

Under Rule 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a). The record to be considered on a motion for summary judgment may include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Rule 56(c)(1)(A).[3] An issue is genuine when the evidence is such that a reasonable jury could return a verdict in favor of the nonmovant. <u>See</u> <u>Mize v. Jefferson City Bd. of Educ.</u>, 93 F.3d 739, 742 (11th Cir. 1996) (quoting <u>Hairston v. Gainesville Sun Publ'g Co.</u>, 9 F.3d 913, 919 (11th Cir. 1993)). "[A] mere scintilla of evidence in support of the non-moving party's position is insufficient to

---

[3] Rule 56 was revised in 2010 "to improve the procedures for presenting and deciding summary-judgment motions." Rule 56 advisory committee's note 2010 Amendments.

> The standard for granting summary judgment remains unchanged. The language of subdivision (a) continues to require that there be no genuine dispute as to any material fact and that the movant be entitled to judgment as a matter of law. The amendments will not affect continuing development of the decisional law construing and applying these phrases.

<u>Id.</u> Thus, case law construing the former Rule 56 standard of review remains viable and is applicable here.

defeat a motion for summary judgment." <u>Kesinger ex rel. Estate of Kesinger v. Herrington</u>, 381 F.3d 1243, 1247 (11th Cir. 2004) (citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 252 (1986)).

The party seeking summary judgment bears the initial burden of demonstrating to the court, by reference to the record, that there are no genuine issues of material fact to be determined at trial. <u>See</u> <u>Clark v. Coats & Clark, Inc.</u>, 929 F.2d 604, 608 (11th Cir. 1991). "When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." <u>Jeffery v. Sarasota White Sox, Inc.</u>, 64 F.3d 590, 593-94 (11th Cir. 1995) (internal citations and quotation marks omitted). Substantive law determines the materiality of facts, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." <u>Anderson</u>, 477 U.S. at 248. In determining whether summary judgment is appropriate, a court "must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." <u>Haves v. City of Miami</u>, 52 F.3d 918, 921 (11th Cir. 1995) (citing <u>Dibrell Bros. Int'l, S.A. v. Banca Nazionale Del Lavoro</u>, 38 F.3d 1571, 1578 (11th Cir. 1994)).

## III.   Factual Background[4]

In May of 2010, Townsend, a black male in his forties, began working for NAPA in Atlanta, Georgia as a delivery driver. <u>See</u> Wright Decl. ¶ 4, Ex. A. On September 16,

---

[4] Despite Townsend's failure to submit any evidence in support of his Response, to resolve NAPA's Motion, the Court still views any properly disputed facts and makes all reasonable inferences in the light most favorable to Townsend. The Court notes that these facts may differ from those that could ultimately be proved at a trial. <u>See</u> <u>Lee v. Ferraro</u>, 284 F.3d 1188, 1190 (11th Cir. 2002).

2011, NAPA laterally transferred Townsend from its "retail store on Pryor Road in Atlanta, Georgia, to [its] retail store on Fulton Industrial Boulevard in Atlanta, Georgia." Id. ¶ 5. According to Townsend, Pryor Road is a "larger volume store" and the store to which he was transferred, Fulton Industrial, was a "small store." See Motion, Ex. 3: Deposition of Rodney Kenneth Townsend (Doc. 62-3; Townsend Dep.) at 139. In addition, Townsend maintains that while working for NAPA in Atlanta, Georgia he was "left out of store meetings," id. at 137-38, asked to sign a sheet saying he did attend such meetings, and treated differently than younger employees, id. at 138, 140-41. On June 14, 2013, Townsend began a scheduled vacation in Florida. See Wright Decl. ¶ 7; see also Townsend Dep. at 107. Townsend did not return to work in Atlanta, Georgia.

While in Florida, Townsend contacted Linda Wright, NAPA's Human Resources Manager for Jacksonville, Florida, to inquire about employment opportunities with NAPA in Jacksonville. See Townsend Dep. at 108; Wright Decl. ¶¶ 7, 9. Townsend told Wright that he had been a delivery driver for NAPA in Atlanta, Georgia and was interested in obtaining another full-time delivery driver position with NAPA in Jacksonville, Florida. See Wright Decl. ¶¶ 9, 10; Response at 7. Townsend explained that he was only interested in full-time positions because he wanted the medical benefits. See Wright Decl. ¶ 10; Response at 7. Wright informed Townsend, however, that "the only Delivery Driver positions available in the Jacksonville operation were part-time positions." See Wright Decl. ¶ 11; Response at 7. Wright told Townsend that the only full-time position available in Jacksonville was a position at NAPA's Ocean Way store. See Wright Decl. ¶ 11. According to Wright, she advised Townsend that the Ocean Way position was that of a "Stocker/Delivery Driver," which would have some delivery driver responsibilities, but "the primary job responsibilities

would be those of a Stocker." <u>See id.</u>  Although Townsend disputes this characterization of the position, he concedes that NAPA told him that it did not have delivery driver jobs available, and he would be doing stocker duties in the Ocean Way position.  <u>See</u> Response at 7-8; Townsend Dep. at 111-13 ("Q. So when you accepted the job, what did you believe the job would entail?  A. Well, I was told that I could be hired and keep my benefits as a delivery driver, full-time delivery driver and that they really didn't have delivery driver jobs available.  Q: And so that meant you would have to do stocker duties as well; is that--  A. It's not 'as well' in there.  It's just I will be doing stocker duties.").

After an interview with Charles Davis, the Ocean Way store manager, Wright and Davis offered the position to Townsend, he accepted, and began work on June 23, 2013. <u>See</u> Wright Decl. ¶¶ 14-15.  Townsend acknowledges that upon starting his employment with the Ocean Way store he was shown how to perform the duties of a stocker.  <u>See</u> Townsend Dep. at 112.  Notably, although the starting salary for the position at the Ocean Way store was $8.35 per hour, because Townsend was a former NAPA employee, "management agreed to compensate Mr. Townsend at $10.00 per hour, the same hourly rate he had earned working for NAPA in Atlanta, Georgia."  <u>See</u> Wright Decl. ¶ 16; Townsend Dep. at 113 (affirming that he was compensated at $10.00 per hour).  NAPA viewed this change as a termination from his Georgia employment and a "new hire" in Florida.  <u>See</u> Wright Decl. ¶¶ 18-19.[5]  Townsend characterizes this move as a voluntary "transfer" between NAPA stores, and insists that his position in Florida was that of a full-

---

[5] Because Townsend obtained employment with NAPA in Jacksonville, Florida before NAPA had processed his termination paperwork from the Atlanta, Georgia position, Townsend's change of stores was labeled a "transfer" for payroll purposes.  <u>See</u> Wright Decl. ¶ 18.  "However, this designation was only used for administrative purposes within the payroll department," <u>id.</u>, and it is undisputed that on June 26, 2013, Townsend attended new-hire orientation and completed new-hire paperwork for the Ocean Way store position.  <u>See</u> Wright Decl. ¶ 19, Ex. A; Townsend Dep. at 113; Response at 10-11.

time delivery driver.  <u>See</u> Townsend Dep. at 108-09; Response at 7-10.  Regardless, it is undisputed that it was Townsend's choice to move to Florida, <u>see</u> Townsend Dep. at 17, 109, and he accepted the Florida position knowing it required him to work as a stocker, <u>id.</u> at 113, 132-33.

Soon after he began work at the Ocean Way store, Townsend "submitted paperwork to NAPA's Employee Service Center seeking reimbursement for the moving expenses associated with his personal decision to relocate from Georgia to Florida."  <u>See</u> Wright Decl. ¶ 20; Response at 11; <u>see also</u> Amended Complaint, Ex. B.  NAPA denied this request.  <u>See</u> Wright Decl. ¶¶ 22-25; Amended Complaint, Ex. B.  Wright spoke to Townsend and informed him that "he was not eligible for relocation reimbursement because NAPA did not direct him to move from Georgia to Florida, and because relocation reimbursement is reserved for executive-level employees and not hourly employees."  <u>See</u> Wright Decl. ¶ 24.  Wright asserts that she has "never seen an hourly employee receive reimbursement from the Company for moving expenses."  <u>Id.</u>

While working at the Ocean Way store, Townsend alleges that he heard other employees making disparaging comments based on his race.  <u>See</u> Amended Complaint ¶¶ 39-41.  During his deposition, Townsend testified that a delivery driver named Keith told him when he first started at Ocean Way that there were opportunities with NAPA in Jacksonville.  <u>See</u> Townsend Dep. at 121-22.  According to Townsend, the allegedly inappropriate comments occurred later when Keith came back to Townsend while Townsend was putting up stock and said:

> something to the degree, he [Keith] hoped that I didn't think I was going to move up the ladder because he said they weren't looking . . . that I needed to be looking for another place to work because there were no opportunities, which means he says something and then he took it back at a later time.

See Townsend Dep. at 121-22.  In addition, Townsend testified that on a different occasion he overheard Keith state "I don't know why that 'N word' is still at the store," but Townsend did not know to whom Keith was speaking.  Id. at 124-25.  Townsend never informed anyone of this incident.  Id.  According to Townsend's deposition testimony, on one other occasion, while Townsend was putting up stock, he heard "someone" from the front of the store say "where is that 'N word,'" and believes the comment was in reference to him as he was the only black employee in the store.  See id. at 125-26.  Townsend did not tell anyone about this incident or otherwise report the matter to NAPA administration.  Id. at 127.

Townsend's employment with NAPA ended on August 2, 2013, when Davis and Wright made the decision to terminate Townsend for "insubordination and substandard job performance."  See Motion, Ex. 2: Declaration of Charles Davis (Doc. 62-2; Davis Decl.) ¶ 19; Wright Decl. ¶ 26.  In his Declaration, Davis states that "Townsend would leave the Ocean Way store while on the clock during his scheduled shift without permission, and he would not tell anyone where he was going."  Id. ¶ 10.  Davis also describes an incident where he found Townsend washing Townsend's personal car in the parking lot behind the store while on the clock.  Id. ¶ 13.  According to Davis, he counseled Townsend on multiple occasions that: he could not conduct personal matters while on the clock, he needed to let management know if he was going to leave the store during his shift for any reason, and a failure to improve his behavior could result in termination.  Id. ¶¶ 9-14.  Davis ultimately terminated Townsend after discovering Townsend using the computer located in Davis'

office to conduct a search for Davis' personal information on a website called Intellius.  See id. ¶¶ 15-19, Ex. A.[6]

## IV.　Count I – Age Discrimination in Georgia

In Count I of the Amended Complaint, Townsend alleges that NAPA discriminated against him on the basis of age when it "involuntarily transferred" him from the Pryor Road store in Atlanta, Georgia, an allegedly "high volume" store, to the Fulton Industrial store in Atlanta, Georgia, a purportedly "low sales volume" store.  See Amended Complaint ¶¶ 21-24.  In addition, Townsend maintains that while working at the Fulton Industrial store he was subjected to "disparate treatment" on the basis of age.  Id. ¶ 27.  For example, he alleges that he "was isolated from all store employee meetings and social events."  Id. ¶¶ 27-32.  Townsend asserts that these actions amounted to age discrimination in violation of the ADEA and section 31-1-2 of the Georgia Code.  Id. at 6.  However, regardless of whether Townsend has any evidence to support these allegations, his age discrimination claims fail as a matter of law.

As to his Georgia law claim, Townsend is correct that section 31-1-2 does prohibit businesses from discriminating against employees on the basis of age.  See Ga. Code Ann. § 34-1-2.  However, section 31-1-2 is a penal statute which provides that a violation of its prohibition on age discrimination constitutes a misdemeanor, punishable by a fine.  Id.  "Penal statutes in Georgia do not give rise to a private cause of action for the conduct proscribed."  See Calhoun v. Fed. Nat'l Mortg. Assoc., 823 F.2d 451, 455 (11th Cir. 1987).

---

[6] In his Response, Townsend disputes Davis' account, insists he only left the store on his ten-minute breaks or for a one-hour lunch, maintains that Davis never counseled him, and denies conducting a personal information search on Davis.  See Response at 14-18.  However, as explained above, Townsend's unsworn Response is not evidence in this case, and thus, does not create an issue of fact for purposes of summary judgment as to the statements made in Davis' unrebutted Declaration.  See infra Part I.

As such, Townsend may not rely on this statute to assert a civil cause of action for age discrimination against NAPA. Id.; see also Reilly v. Alcan Aluminum Corp., 528 S.E. 2d 238, 240 (Ga. 2000) ("[W]hen the General Assembly enacted Georgia's age discrimination statute in 1971, it did not provide a civil remedy, but instead only provided for criminal misdemeanor penalties." (footnote omitted)).  Having determined that Townsend cannot recover under section 34-1-2, the Court turns next to Townsend's other statutory basis for his age discrimination claim, the ADEA.

Townsend contends that NAPA's 2011 decision to transfer him to a different store in Atlanta, Georgia, and the "disparate treatment" at the Fulton Industrial store violated the ADEA.  See Amended Complaint ¶¶ 21-22, 27-31.  Prior to filing a lawsuit, "[t]he ADEA requires that an individual exhaust all available administrative remedies by filing a charge of unlawful discrimination" with the Equal Employment Opportunity Commission (EEOC).  See Bost v. Fed. Exp. Corp., 372 F.3d 1233, 1238 (11th Cir. 2004); Kelly v. Dun & Bradstreet, Inc., 557 F. App'x 896, 898 (11th Cir. 2014).  A charge of age discrimination must be filed within the requisite timeframe, and must "at a minimum, 'be in writing and . . . name the prospective respondent and . . . generally allege the discriminatory act(s).'"  Bost, 372 F.3d at 1238 (alterations in original) (quoting 29 C.F.R. § 1626.6).  Significantly, a plaintiff's discrimination claims in any subsequent lawsuit will be "limited by the scope of the EEOC investigation that can reasonably be expected to grow out of the charge of discrimination."  Kelly, 557 F. App'x at 899 (citing Gregory v. Ga. Dep't of Human Res., 355 F.3d 1277, 1280 (11th Cir. 2004)).  This means that a plaintiff "may not raise '[a]llegations of new acts of discrimination' in the judicial proceedings."  Hillemann v. Univ. of Central Fla., 167 F. App'x 747, 749 (11th Cir. 2006) (quoting Wu v. Thomas, 863 F.2d 1543, 1547

(11th Cir. 1989)); see also Kelly, 557 F. App'x at 899 ("[A]llegations of new acts of discrimination that are offered as the essential basis for requested judicial review are not appropriate absent prior EEOC consideration."). However, because courts are "'extremely reluctant to allow procedural technicalities to bar'" discrimination claims, the scope of an EEOC complaint is not "'strictly interpreted.'" See Gregory, 355 F.3d at 1280 (quoting Sanchez v. Std. Brands, Inc., 431 F.2d 455, 460-61, 465 (5th Cir. 1970)); Kelly, 557 F. App'x at 899. Rather, "[t]he proper inquiry is whether the complaint is like or related to, or grew out of, the allegations contained in the relevant charge." Kelly, 557 F. App'x at 899. Stated another way, "[j]udicial claims are allowed if they 'amplify, clarify, or more clearly focus' the allegations in the EEOC complaint . . . ." Gregory, 355 F.3d at 1279 (quoting Wu, 863 F.2d at 1547).

Townsend filed his EEOC charge of discrimination against NAPA in August of 2013. See Amended Complaint, Ex. A (EEOC Charge); Wright Decl. ¶ 27.[7] In his EEOC Charge, Townsend indicates that the discriminatory conduct took place between June 21, 2013, and August 2, 2013. See EEOC Charge. In recounting the particulars of his claim, Townsend begins by stating that: "On May 2010, I was hired by [NAPA] as a Delivery Driver. On June 21, 2013, I was transferred from the Atlanta Georgia District as a Delivery Driver to Jacksonville, Florida." See id. Thus, Townsend's account of the discriminatory treatment in his EEOC Charge does not include his time working for NAPA in Atlanta, Georgia. Indeed, the EEOC Charge does not reference the Pryor Road or Fulton Industrial

---

[7] In his Response, Townsend argues that he filed a complaint with the EEOC "on or about June 21, 2013." See Response at 19. However, Townsend presents no evidence to support this assertion. According to Wright, NAPA learned of Townsend's complaints of age and race discrimination "upon receipt of his Charge of Discrimination filed with the [EEOC] on or about August 21, 2013." See Wright Decl. ¶ 27. The only charge of record is the undated EEOC Charge attached to the Amended Complaint which references Townsend's termination on August 2, 2013, and thus could not have been filed prior to that date. See Amended Complaint, Ex. A.

stores, any previous transfer occurring in Georgia, or any allegedly discriminatory treatment that occurred at those locations. Rather, Townsend focuses solely on his "transfer" to Florida, the change from a driver position to a stock position, NAPA's refusal to reimburse him for his travel expenses, and discriminatory events that allegedly occurred in Florida thereafter. See id. Notably, when Townsend responded to the EEOC investigator's letter summarizing NAPA's position, Townsend mentions that he was "involuntarily" transferred from the Pryor Road store to the Fulton Industrial store, but does not assert that this transfer was in any way discriminatory or even an adverse action. See Amended Complaint, Ex. D. And, while Townsend recounts conversations he had with the store manager at the Fulton Industrial store, he does not allude to any of the discriminatory treatment which he now alleges took place at that store. Compare id. with Amended Complaint ¶¶ 27-32.

In light of the foregoing, even broadly construing the statements in the EEOC Charge, the Court finds that Townsend's age discrimination claims are not properly exhausted. The EEOC could not reasonably be expected to conduct an investigation into undisclosed discriminatory acts in Georgia that occurred at an unmentioned store location, predated the timeframe set forth in the EEOC Charge, and were unrelated to the events or people described. See Rodriguez v. Sec'y of the Dep't of Veterans Affairs, 605 F. App'x 957, 958 (11th Cir. 2015) ("[T]he exhaustion requirement exists in part to ensure that the EEOC has notice and the first opportunity to investigate and mediate all employment discrimination claims . . . ."); Stuart v. Jefferson Cnty. Dep't of Human Res., 152 F. App'x 798, 801 (11th Cir. 2005). As such, Townsend's claims regarding the Georgia stores plainly constitute "new acts of discrimination" which he is attempting to raise for the first

time in this lawsuit. As such, Townsend's age discrimination claims premised on the events that occurred in Georgia are procedurally barred for failure to exhaust.[8] See Giles v. BellSouth Telecomm'ns, Inc., 542 F. App'x 756, 758-59 (11th Cir. 2013); Lambert v. Ala. Dep't of Youth Servs., 150 F. App'x 990, 993-94 (11th Cir. 2005); Chaoudi v. Workforce Central Fla., No. 6:13-cv-1140-Orl-37DAB, 2014 WL 2155217, at *2 (M.D. Fla. May 22, 2014). Accordingly, NAPA is entitled to summary judgment in its favor on Count I of the Amended Complaint in its entirety.

## V.     Count II – Race Discrimination in Florida

### A. Applicable Law[9]

Title VII provides "that it is unlawful for an employer 'to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" Holifield v. Reno, 115 F.3d 1555, 1561 (11th Cir. 1997) (quoting 42 U.S.C. §§ 2000e-2(a)(1)). A plaintiff may

---

[8] With respect to the 2011 transfer within Georgia, the Court notes that regardless of whether Townsend had included this transfer in his 2013 EEOC Charge, this claim would be procedurally barred. NAPA transferred Townsend to the Fulton Industrial store in September of 2011. See Wright Decl. ¶ 5; Response at 4. This purportedly undesirable, involuntary transfer constitutes a discrete act of alleged discrimination. See Meidling v. Walgreen Co., No. 8:12-cv-2268-T-30TBM, 2014 WL 2700742, at *4 (M.D. Fla. June 13, 2014); Jones v. Heritage-Crystal Clean, LLC, No. 8:16-cv-623-T-33JSS, 2016 WL 4063396, at *3-4 (M.D. Fla. July 29, 2016). Thus, under both the Georgia and Florida deadlines for filing, any claim regarding the September 2011 transfer was time-barred by 2013 when Townsend filed his EEOC Charge. See Brooks v. CSX Transp., Inc., No. 3:09-cv-379-J-25TEM, 2013 WL 12091685, at *4 (M.D. Fla. Mar. 29, 2013) ("'[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges.'" (quoting Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002))) aff'd 555 F. App'x 878 (11th Cir. 2014); see also Kelly, 557 F. App'x at 898 ("In Georgia, a charge of discrimination must be filed within 180 days after the alleged unlawful practice."); Brooks v. CSX Transp., Inc., 555 F. App'x 878, 880 (11th Cir. 2014) ("For a charge to be timely in a deferral state like Florida, it must be filed within 300 days of the last discriminatory act.").

[9] Townsend asserts parallel race discrimination claims under Title VII and the FCRA. See Amended Complaint ¶ 46. "Because the FCRA is modeled after Title VII, and claims brought under it are analyzed under the same framework, the state-law claims do not need separate discussion and their outcome is the same as the federal ones." See Alvarez v. Royal Atl. Developers, Inc., 610 F.3d 1253, 1271 (11th Cir. 2010) (internal citation omitted); Gray v. City of Jacksonville, Fla., 492 F. App'x 1, 3 (11th Cir. 2012).

establish a Title VII discrimination claim through the introduction of direct or circumstantial evidence or statistical proof of discrimination.[10]  Lee v. U.S. Steel Corp., 450 F. App'x 834, 839 (11th Cir. 2012) (citing Alvarez v. Royal Atl. Developers, Inc., 610 F.3d 1253, 1264 (11th Cir. 2010)).  Where, as here, the plaintiff relies on circumstantial evidence of discrimination,[11] the Court applies the burden-shifting framework articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  Alvarez, 610 F.3d at 1264.  However, a plaintiff may also present "circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent."  Edmond v. Univ. of Miami, 441 F. App'x 721, 723 (11th Cir. 2011) (citing Smith v. Lockheed-Martin Corp., 644 F.3d 1321, 1328 (11th Cir. 2011)).

When relying on the McDonnell Douglas framework to support a claim of discrimination, the plaintiff bears the initial burden of establishing a prima facie case of discrimination.  A plaintiff establishes a prima facie case of discrimination under Title VII

---

[10] Title VII encompasses disparate treatment discrimination claims as well as disparate impact claims. Armstrong v. Flowers Hosp., Inc., 33 F.3d 1308, 1312-13 (11th Cir. 1994).  Townsend has not alleged disparate impact discrimination, which involves facially neutral employment practices which have significant adverse effects on protected groups, the evidence of which usually focuses upon statistical disparities rather than specific incidents.  See Reeves v. C.H. Robinson Worldwide, Inc., 594 F.3d 798, 807-08 (11th Cir. 2010). Here, Townsend's race discrimination claims are premised on disparate treatment; he contends that NAPA took a number of actions against him because of his race.  See Reeves, 594 F.3d at 807.

[11] A plaintiff may "present direct evidence of discriminatory intent in the form of actions or remarks of the employer reflecting a discriminatory attitude."  Hill v. Metro. Atlanta Rapid Transit Auth., 841 F.2d 1533, 1539 (11th Cir. 1988), amended on reh'g on different grounds, 848 F.2d 1522 (11th Cir. 1988).  "Direct evidence is that which shows an employer's discriminatory intent 'without any inference or presumption.'"  Hinson v. Clinch Cnty., Ga. Bd. of Educ., 231 F.3d 821, 827 (11th Cir. 2000)(citation omitted). However, "only the most blatant remarks, whose intent could be nothing other than to discriminate" will constitute direct evidence of discrimination.  Carter v. City of Miami, 870 F.2d 578, 582 (11th Cir. 1989).  Although Townsend testified during his deposition that on one occasion a co-worker made a negative comment to him that he understood to be racially motivated, and on two other occasions he overheard a co-worker using a racial slur, he does not assert that any supervisor or other decision-maker made such statements, and he does not connect those incidents to any adverse action taken against him.  As such, this is not a direct evidence case.  See Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1330 (11th Cir. 1998) ("[R]emarks by non-decisionmakers or remarks unrelated to the decisionmaking process itself are not direct evidence of discrimination."); Singleton v. Auburn Univ. Montgomery, 520 F. App'x 844, 849 (11th Cir. 2013).

by showing: "(1) [he] is a member of the protected class; (2) [he] was subjected to adverse employment action; (3) [his] employer treated similarly situated [white] employees more favorably; and (4) [he] was qualified to do the job." McCann v. Tillman, 526 F.3d 1370, 1373 (11th Cir. 2008) (internal quotations omitted) (fourth alteration in original); see also Holifield, 115 F.3d at 1562. "To make a comparison of the plaintiff's treatment to that of [an employee outside plaintiff's protected class], the plaintiff must show that he and the employees are similarly situated in all relevant respects." Holifield, 115 F.3d at 1562. If a plaintiff cannot identify a similarly situated comparator who was treated more favorably than himself, "summary judgment is appropriate where no other evidence of discrimination is present." Id.

With respect to the second prong of the prima facie case, "not all conduct by an employer negatively affecting an employee constitutes adverse employment action." See Davis v. Town of Lake Park, Fla., 245 F.3d 1232, 1238 (11th Cir. 2001). Rather, the Eleventh Circuit instructs that "to prove adverse employment action in a case under Title VII's anti-discrimination clause, an employee must show a serious and material change in the terms, conditions, or privileges of employment." Davis, 245 F.3d at 1239; see also Crawford v. Carroll, 529 F.3d 961, 974 n.14 (11th Cir. 2008) (noting that the broader standard applicable in retaliation claims has no application to substantive Title VII discrimination claims). While a plaintiff is not required to prove "direct economic consequences in all cases, the asserted impact cannot be speculative and must at least have a tangible adverse effect on the plaintiff's employment." Id. "Moreover, the employee's subjective view of the significance and adversity of the employer's action is not controlling; the employment action must be materially adverse as viewed by a reasonable

person in the circumstances." Id.; see also Holland v. Gee, 677 F.3d 1047, 1057 (11th Cir. 2012); Miller-Goodwin v. City of Panama City Beach, Fla., 385 F. App'x 966, 970 (11th Cir. 2010). "Otherwise . . . every trivial personnel action that an irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit." Doe v. DeKalb Cnty. Sch. Dist., 145 F.3d 1441, 1449 (11th Cir. 1998) (internal quotations omitted).

If the plaintiff presents a prima facie case, that evidence "creates a presumption that the employer unlawfully discriminated against the employee," then the burden of production shifts to the defendant to offer a legitimate, non-discriminatory reason for the adverse employment action. Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254-56 (1981); Alvarez, 610 F.3d at 1264. If the defendant meets this burden of production, the burden shifts back to the plaintiff to show that the stated reason is a mere pretext for unlawful discrimination and was not the "true reason for the employment decision." Burdine, 450 U.S. at 256; Alvarez, 610 F.3d at 1264; Holifield, 115 F.3d at 1565 ("[T]he plaintiff has the opportunity to demonstrate that the defendant's articulated reason for the adverse employment action is a mere pretext for discrimination." (citing McDonnell Douglas, 411 U.S. at 804)). A plaintiff may satisfy this burden "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Burdine, 450 U.S. at 256. "Despite these shifts in the burden of production, the ultimate burden of persuasion remains on the plaintiff to show that the defendant intentionally discriminated against [him]." Alvarez, 610 F.3d at 1264.

**B. Discussion**

Although difficult to discern, Townsend appears to contend that NAPA took the following adverse employment actions against him on the basis of race: (1) assigned him stock duties rather than delivery driver duties, (2) refused to reimburse his moving expenses when he relocated to Florida, and (3) terminated his employment. See Amended Complaint at 4-5; see also EEOC Charge; Townsend Dep. at 132-37.[12] Notably, Townsend conceded at his deposition that he has no evidence that any of these incidents were based on his race. See Townsend Dep. at 137. Townsend's personal opinion that he was discriminated against, without more, cannot satisfy his burden of establishing a prima facie case of discrimination. See Holifield, 115 F.3d at 1564 ("While [plaintiff] has testified that he felt discriminated against, his opinion, without more, is not enough to establish a prima facie case of race discrimination."). Indeed, upon consideration of each of these allegedly

---

[12] The Court notes that Townsend's EEOC Charge includes the allegation that he "overheard my co-workers using racial derogatory words to describe me," and he references these comments in his Amended Complaint. See EEOC Charge; Amended Complaint at 4-5. In his Deposition, Townsend identifies the "racial slurs" as one of the ways in which he was discriminated against. See Townsend Dep. at 133. Although not specifically alleged, to the extent Townsend intends to assert a hostile work environment claim, he fails to present sufficient evidence to survive the summary judgment stage of these proceedings. Specifically, the only evidence before the Court as to a purportedly hostile work environment are the isolated incidents recounted in Townsend's deposition and described above. See Townsend Dep. at 121-27; infra pp. 8-9. Those three incidents alone do not rise to the level of "severe or pervasive" harassment which would constitute a hostile work environment. See Fortson v. Carlson, 618 F. App'x 601, 606-08 (11th Cir. 2015); Barrow v. Ga. Pac. Corp., 144 F. App'x 54, 56-57 (11th Cir. 2005) ("'Racial slurs spoken by co-workers ha[ve] to be so commonplace, overt and denigrating that they create[] an atmosphere charged with racial hostility.'" (alterations in original) (quoting Edwards v. Wallace Cmty. Coll., 49 F.3d 1517, 1521 (11th Cir. 1995)). Moreover, Townsend does not cite to any evidence that NAPA had actual or constructive notice of the conduct. See Watson v. Blue Circle, Inc., 324 F.3d 1252, 1259 (11th Cir. 2003) ("When, as in this case, the alleged harassment is committed by co-workers or customers, a Title VII plaintiff must show that the employer either knew (actual notice) or should have known (constructive notice) of the harassment and failed to take immediate and appropriate corrective action."). It is undisputed that until he filed his EEOC Charge, Townsend never complained about the comments to anyone, nor did he utilize the procedures outlined in NAPA's employee handbook for reporting harassment. See Amended Complaint, Ex. C at 16, 29; Townsend Dep. at 101-02, 123, 125-27. Given the absence of evidence from which a reasonable juror could find that Townsend was subjected to a hostile work environment for which NAPA is responsible, the alleged racial slurs of Townsend's co-workers do not constitute a viable discrimination claim.

discriminatory acts, the Court finds no evidence to suggest that Townsend was the subject of racial discrimination.

First, as to his work as a stocker, Townsend argues that he was discriminated against because he "was placed in a position and asked to do something that didn't pertain to the job." See Townsend Dep. at 132. However, NAPA presents unrebutted evidence that Townsend voluntarily chose to move to Florida, was offered a position at the Ocean Way store that entailed stocking duties, and elected to accept that employment. See Wright Decl. ¶¶ 7-15. Indeed, Townsend concedes that after moving to Florida, he wanted to continue with a full-time position at NAPA which meant "giving up" his delivery driver duties and taking on stocker responsibilities. See Townsend Dep. at 133. Thus, regardless of how Townsend characterizes his move to Florida, he does not dispute that the decision to move was voluntary, and he accepted the new position knowing it required working as a stocker. Because Townsend chose to move to Florida and accept this position, the Court cannot discern how being made to then perform the stocking duties of the job could constitute an adverse employment action. See Allen v. U.S. Postmaster Gen., 158 F. App'x 240, 243-44 (11th Cir. 2005). Moreover, as it was Townsend's decision to move to Florida and accept the position at the Ocean Way store, this voluntary "transfer" was not based on his race, and thus cannot form the basis of a race discrimination claim. See Doe, 145 F.3d at 1454 ("Of course, a finding that [plaintiff's] transfer was purely voluntary would have been dispositive in the [defendant's] favor; a transfer cannot be 'because of a [protected category]' if it occurred as the result of an employee's own request."); see also Entrekin v. City of Panama City Fla., 376 F. App'x 987, 995 (11th Cir. 2010) (reasoning that because a reassignment occurred at the plaintiff's request, it was not an adverse action).

Townsend next argues that NAPA's refusal to pay Townsend's moving expenses, which he incurred as a result of his personal, voluntary decision to move to Florida, was due to his race. Townsend fails to establish a <u>prima facie</u> case of race discrimination as to this decision as well. To establish a <u>prima facie</u> case of race discrimination based on circumstantial evidence, Townsend must present evidence that NAPA treated similarly situated employees outside his protected class more favorably. <u>See</u> <u>McCann</u>, 526 F.3d at 1373. Townsend makes no attempt to do so. Specifically, Townsend presents no evidence that other hourly employees who continued their employment with NAPA, after voluntarily deciding to move to a different locale, were reimbursed for their moving expenses. Indeed, Townsend conceded at his deposition that he did not know if there were any white employees, similarly situated to him, who were reimbursed by NAPA for moving expenses. <u>See</u> Townsend Dep. at 135-36. Thus, Townsend cannot satisfy his burden on summary judgment with respect to this purportedly discriminatory action either.

Finally, Townsend contends that his termination was also the result of race discrimination. However, once again, Townsend fails to meet his <u>prima facie</u> burden. Specifically, Townsend does not identify any similarly situated comparator or present any other probative evidence of disparate treatment. <u>See</u> <u>Brooks v. CSX Transp., Inc.</u>, 555 F. App'x 878, 883 (11th Cir. 2014) ("As for her claim under Title VII, [plaintiff] has failed to establish a prima facie case of race discrimination based on her termination because she relied on insufficient comparator evidence and presented no other probative evidence of disparate treatment."); <u>Oliver v. Nat'l Beef Packing Co., LLC</u>, 294 F. App'x 455, 457-58 (11th Cir. 2008) ("The district court properly found that [plaintiff] did not establish a <u>prima facie</u> case of race discrimination regarding his termination claim because he did not satisfy

the fourth element of the <u>prima facie</u> case—identification of a proper comparator.").

However, even if Townsend could establish a <u>prima facie</u> case, he fails to offer any

evidence to rebut NAPA's non-discriminatory reason for firing him.

According to the Declarations of Wright and Davis, they decided to terminate

Townsend as a result of his poor performance and insubordination. <u>See</u> Wright Decl. ¶ 26;

Davis Decl. ¶ 19. Specifically, Davis asserts that Townsend had engaged in personal

matters while on the clock, including leaving the premises without telling anyone, washing

his car in the store parking lot, and using the computer in Davis' office. <u>See</u> Davis Decl.

¶¶ 10-18. The only evidence to the contrary is Townsend's conclusory statement during

his deposition that his termination was discriminatory because "I had not broken policy. I

hadn't done anything wrong." <u>See</u> Townsend Dep. at 136. Aside from this general denial,

Townsend presents no evidence to rebut the account in Davis' Declaration, signed under

penalty of perjury, that Townsend repeatedly conducted personal business while on the

clock during work hours. Notably, while Townsend denies that he was counseled about

this type of behavior, denies that he was conducting a background search on Davis, and

insists that he left the store only during breaks and the lunch hour, he concedes that on at

least one occasion he left the store while on the clock without telling anyone in

management he was leaving, on more than one occasion Davis was looking for Townsend

and could not find him, and once, when Davis was looking for Townsend he found him in

the parking lot behind the Ocean Way store washing his personal car. <u>See</u> Response at

14-18.[13] Townsend also does not dispute that on the day he was fired, Davis found

---

[13] Townsend argues that he only left the store while on the clock during a ten-minute break or on his lunch hour. <u>See</u> Response at 14-15. However, these arguments themselves belie his contention that he did not violate any company policy. According to the NAPA employee handbook, which Townsend attached to the Amended Complaint, an employee is required to clock in and out at the "start and finish of [his] lunch breaks,"

Townsend using the computer in Davis' office.  Id. at 17.  As such, even considering Townsend's unsupported version of the facts, he fails to undermine Davis and Wright's stated reasons for terminating him.  Significantly, Townsend does not identify any similarly situated white employee who engaged in similar conduct, i.e., left the store without telling management, washed his car at work, or used Davis' office computer, but was not terminated.  Indeed, the record is devoid of any evidence which could indicate that Davis and Wright's decision to terminate Townsend's employment was racially motivated.  Absent any evidence from which a reasonable juror could conclude that NAPA's stated reason for terminating Townsend's employment was a pretext for race discrimination, Townsend's discriminatory termination also claim fails.  In light of the foregoing, the Court determines that NAPA is entitled to summary judgment on the entirety of Townsend's race discrimination claims as well.[14]  Accordingly, it is

**ORDERED**:

1.  Defendant's Motion for Summary Judgment and Incorporated Memorandum of Law (Doc. 62) is **GRANTED**.

---

and "any time [he] leave[s] company property except when on company business."  See Amended Complaint, Ex. C at 8.  The handbook further instructs that employees are allowed "small breaks . . . throughout the day based on customer flow," but "[e]mployees should not leave the premises during their break periods."  Id. at 9.

[14] The Court notes that at the conclusion of its Motion, NAPA requests an award of "its expenses and costs incurred in defending against this action . . . ."  See Motion at 25.  Local Rule 4.18, United States District Court, Middle District of Florida (Local Rule(s)), provides that:
> In accordance with Fed. R. Civ. P. 54, all claims for costs or attorney's fees preserved by appropriate pleading or pretrial stipulation shall be asserted by separate motion or petition filed no later than fourteen (14) days following the entry of judgment.  The pendency of an appeal from the judgment shall not postpone the filing of a timely application pursuant to this rule.

See Local Rule 4.18(a) (emphasis added).  Thus, because the Local Rules require NAPA's request for costs and expenses to be made by separate motion, the Court will not address its request at this time.

2. The Clerk of the Court is directed to enter **JUDGMENT** in favor of Defendant Genuine Parts Company and against Plaintiff Rodney Kenneth Townsend.

3. The Clerk of the Court is further directed to terminate any remaining pending motions and deadlines as moot and close the file.

**DONE AND ORDERED** in Jacksonville, Florida, this 31st day of May, 2017.

**MARCIA MORALES HOWARD**
United States District Judge

lc11
Copies to:

Counsel of Record
Pro Se Parties